(No. 13282.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JOSEPH J. PELINSKI, Plaintiff in Error.

*Opinion filed June 16, 1920.*

1. CRIMINAL LAW—*general rule as to electing on which count State will prosecute.* Where an indictment charges two or more offenses, parts of one transaction, which are in their nature such that defendant may be guilty of both, the State cannot be put to its election under which count it will prosecute, but where the offenses charged in the several counts are distinct and not, parts of one transaction the State should be required to elect.

2. SAME—*confidence game—when State should be required to elect.* An indictment for the confidence game which charges the defendant in four separate counts with obtaining different sums of money at different times charges four separate and distinct offenses, and the State should be required to elect on which count it will ask for a conviction where it cannot be determined from the indictment that the different offenses charged have any connection with each other.

3. SAME—*alibi need not be proved beyond a reasonable doubt.* The burden is not on the defendant to prove the defense of alibi beyond a reasonable doubt, but he is only required to prove facts which, considered in connection with all the other evidence, create in the minds of the jury a reasonable doubt of his guilt.

WRIT OF ERROR to the City Court of Alton; the Hon. L. D. YAGER, Judge, presiding.

HAROLD J. BANDY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, JOSEPH P. STREUBER, State's Attorney, C. W. MIDDLEKAUFF, and S. G. BROWN, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error (referred to hereafter as defendant) was, together with his wife, Augusta Pelinski, and his daughter, Clara Cleary, indicted by the grand jury at the February term, 1919, of the Alton city court for the con-

fidence game. The indictment contained four counts. The
first count charged that defendant on October 10, 1918, un-
lawfully and feloniously obtained from Wertt Bauer $1800
by means and by use of the confidence game. The second
count charged him with obtaining from the same person, by
means and by use of the confidence game, on March 6,
1918, $1500. The third count charged him with obtaining
from the same person, by means and by use of the confi-
dence game, on August 15, 1918, $800. And the fourth
count charged him with obtaining from the same person,
by means and by use of the confidence game, $800 on
June 5, 1918. All four of the counts were in identical
language except as to the amount of money obtained and
the date when obtained. Defendant moved to quash the
indictment on the ground that it joined separate and dis-
tinct offenses in the different counts, which motion was
overruled. He then entered a motion to require the State
to elect under which count it would proceed, but the court
overruled the motion. He then entered a motion that the
State be required to furnish him a bill of particulars, which
was also overruled. A trial was had and the jury found
defendant guilty of obtaining money by means and by use
of the confidence game in manner and form as charged in
the indictment and found his age to be fifty-nine years.
Motions for a new trial and in arrest of judgment were
overruled and defendant was sentenced to the penitentiary.

A brief statement of the material facts proved by the
State is: Wertt Bauer is a retired farmer living in the
city of Alton. Defendant resided with his wife, Augusta
Pelinski, in the city of St. Louis. Mrs. Pelinski was a
clairvoyant, and in March, 1912, Bauer visited her at her
residence in St. Louis for the purpose of getting his fortune
told. . She succeeded in making him believe that there was
$12,000 in gold buried in his yard at Alton and that she
could discover or raise it. He gave her at that time $502.20.
Between that time and 1917 he made several other visits to

Mrs. Pelinski, and she increased the amount of the treasure buried in Bauer's yard to $70,000, and on the promise that she would raise it from its place of burial Bauer was in-duced to give her other sums of money amounting to, as he testified, between $11,000 and $12,000. Mrs. Pelinski became quite ill and made an extended trip to Florida. Bauer testified that in March, 1918, defendant came to him in Alton and said that his wife had sent him there. He had previously telephoned that he was coming. "He told me they needed $1650, and I told him I will try to get it for them. Over the telephone he told me to come down-town. When I met him on Alby street he said he wanted $1650 for his wife to raise that money that was buried in the yard." Bauer told him to come back a couple of days later, which he did, and Bauer paid him the money. Pe-linski said the money that was buried in the yard would be brought up pretty soon. Bauer had met defendant previ-ously at his residence in St. Louis, but defendant was never present at any of the conversations or business transacted between his wife and Bauer. Defendant came to Alton again June 12 and wanted $1300 "for Mrs. Pelinski again to raise that money that was in the yard." Defendant came again on the 13th and Bauer paid him the amount asked for. Defendant came again in October for more money, which Bauer testified he paid him. The total sum paid de-fendant, as we understand the testimony, amounted to $2000 or more. Bauer further testified that in March, 1919, de-fendant came to him at Alton with another demand for $1000. By that time Bauer appears to have become sus-picious or doubtful about the treasure being raised accord-ing to promise and told defendant he was about broke, and he did not comply with the demand for more money. In-stead, after conferring with a banker in Alton, he informed the police officers of the city of St. Louis, and defendant, his wife and Clara Cleary, who, we understand, is their daughter, were arrested. Extradition of Mrs. Pelinski and

Clara Cleary was refused but defendant was brought to Illinois and tried and convicted, as we have stated.

Many objections were made by the defendant to Bauer testifying to statements made by Mrs. Pelinski, not in the presence of the defendant, during the period from 1912 to 1917. In such consideration as we have given that question we have discovered nothing that has impressed us that reversible error was committed in that respect. We have concluded, however, that the judgment must be reversed on other grounds.

The court committed reversible error in not requiring the State to elect on which count it would ask for a conviction. The four counts charged defendant with obtaining different sums of money at different times by means and by use of the confidence game. The indictment charges four separate and distinct offenses. Where an indictment charges two or more offenses, parts of one transaction, which are in their nature such that defendant may be guilty of all, it is not required that the State be put to its election, but where the offenses charged in the several counts are separate and distinct from each other and are not charged as parts of one transaction the State should be required to elect. (*Goodhue* v. *People,* 94 Ill. 37; *Herman* v. *People,* 131 id. 594; *People* v. *Warfield,* 261 id. 293; *People* v. *Munday,* 280 id. 32.) This rule is not controverted by the State, but it is contended the evidence shows the offenses charged are parts of one transaction; that Mrs. Pelinski acquired the confidence of Bauer regarding her ability to disclose the buried treasure in his yard, which confidence continued throughout the period in which defendant received the money from Bauer, and that it was all done through and by the one scheme or confidence. Whether that position is tenable or not, that matter did not appear in the indictment but required evidence when the defendant was placed on trial. It could not be determined from the indictment that the different offenses charged had any con-

nection with each other or that the means used to obtain
the money were one and the same or different means in
each case. The indictment was not the re-statement of one
offense in different language. It furnished defendant no
information other than that he was charged with four sep-
arate offenses. The court should have required the State
to elect, and it was error to require defendant to plead to
and go to trial upon all four charges.

The court at the request of the State instructed the jury,
in substance, that if they believed from the evidence de-
fendant did not himself engage in the actual practice of
fortune telling, yet if they believed that he acted as the
agent with knowledge of the promises held out he would
be an accessory and equally guilty, and his handling the
money under such circumstances as to charge him with
knowledge of how it was obtained imputes to him a guilty
knowledge of the transaction and the jury should find him
guilty. The State admits the instruction is loosely worded,
which is true; but in addition to that objection it is clearly
wrong and should not have been given. Defendant was not
charged in the indictment with having engaged in the prac-
tice of fortune telling, but the charge was obtaining money
by means and by use of the confidence game. The instruc-
tion directed a verdict, and giving it was error.

Defendant testified he was not in Alton at the times
Bauer claimed he gave him money there, and offered some
proof to corroborate him. The court instructed the jury,
for the State, that to sustain the defense of alibi it was nec-
essary for defendant to prove, beyond a reasonable doubt,
that he was not at the place at the time charged, and that
his whereabouts must be accounted for in such a way as
to show he could not within human limitations have been
at the place charged at any time during the period alleged.
This was clearly erroneous. Where an alibi is interposed
as a defense the burden is not on defendant to prove it be-
yond a reasonable doubt. He is only required to support

the defense by proof of facts and circumstances which, considered in connection with all the other evidence, create in the minds of the jury a reasonable doubt of his guilt. *Ackerson* v. *People,* 124 Ill. 563; *Hoge* v. *People,* 117 id. 35; *Carlton* v. *People,* 150 id. 181.

For the reasons stated the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*