(No. 21263.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERBERT STONE, Plaintiff in Error.

*Opinion filed June 24, 1932.*

JAMES H. SMITH, and HARRY F. JOHNSON, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WARD P. HOLT, State's Attorney, J. J. NEIGER, and WILL P. WELKER, for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

The defendant, Herbert Stone, was indicted by a grand jury in Marion county for having stolen five cows from C. V. Bowen, of the value of $200. A jury found him guilty

and fixed the value of the stolen property at $112.40. Judgment was entered on the verdict and the defendant was sentenced to the Southern Illinois Penitentiary for an indeterminate period. The cause is in this court on writ of error.

The complaining witness, C. V. Bowen, was the owner of ten heifers pastured on his farm near Patoka, Marion county. He lived on another farm several miles distant but was in the habit of going to his pasture once or twice a week to look after his stock. The last time he saw all of the heifers was on Sunday before June 3, 1931. He gave the date as May 30, although the calendar shows it to have been May 31. The cattle were then in the pasture, which was enclosed by a good fence. The gate was securely fastened. He visited the pasture a week later, June 7. The fence and gate were still in good condition but all of the cattle were gone. He started a search for them, and first went to the home of the adjoining land owner, the defendant, of whom he made inquiry concerning the missing heifers. The defendant told him that some of them had come onto his premises and he had turned them into his own pasture. Five of the ten heifers were located there and returned to Bowen's pasture. The defendant claimed he knew nothing of the other cattle. The loss was reported to the sheriff of Marion county, who began an investigation. He went to the National Stock Yards at East St. Louis and learned the defendant had delivered for sale five heifers in a truck about midnight on June 2, 1931. The sheriff returned to his home county and interrogated the defendant, who admitted he had trucked five heifers to East St. Louis and had sold them at the stock yards in two lots—one lot of three yearlings to the Harrison Commission Company and the other lot of two three-year-old heifers to the Producers Live Stock Association. He said the reason for selling them in two lots was that the three young heifers belonged to his wife and the two oldest heifers belonged

to him, and he wanted to make a proper division of the proceeds. A further investigation revealed that four of the five heifers sold by the defendant had been slaughtered and the fifth one had been sold to a butcher, John Weineman, of St. Libory, Illinois. The sufficiency and competency of the proof tending to establish the sale of this heifer to Weineman is challenged by the defendant and will be discussed later. Bowen identified this heifer as his property, and it was turned over to him by Weineman.

It is claimed by the defendant that the court admitted incompetent evidence against him, and that the evidence as it stands does not show his guilt beyond a reasonable doubt.

The evidence which the defendant claims was improperly admitted consists of three exhibits, and are known as People's exhibits "A," "C" and "G." The objection made against them is that they were incompetent, immaterial, and were not the best evidence of the matters they purport to prove. It is further objected that they were not offered under the rules relative to books of account. However, this objection is not argued in the briefs and is therefore waived.

Exhibit "A" was identified by H. D. Dean, a clerk for the Producers Live Stock Association. It was a "slip" known as a "duplicate copy of account sales." It showed the purchase of two head of cattle from the defendant on June 3 for $52.56. Slips in duplicate were made by the witness Dean. One copy was retained by the association and the other was mailed to the defendant. Both copies were original documents executed as a part of the transaction relating to the sale of two heifers which the defendant admits he made to the association. They were admissible in evidence to show their contents and did not constitute secondary evidence.

Exhibit "C" is known as a "drive-in and transfer slip." It was identified by the witness Joe Walters, who made it out. Walters was a cattle checker for the stock yards company and worked at nights. It was made out by him at

the unloading chutes. One copy was retained by the stock yards company and the other was sent to the commission firm to which the stock was consigned. The admission of this exhibit was without error, because, like exhibit "A," it did not constitute secondary evidence but was primary evidence of the delivery of two heifers by the defendant and the consignment to the Producers Live Stock Association. While it is true Walters testified he was not acquainted with Stone and would not say he was the driver of the truck containing the consignment, nevertheless the slip was made out in the ordinary course of business and the defendant admits he did haul two heifers to the National Stock Yards at the time stated on the slip and consigned them to the Producers Live Stock Association. No prejudice could have possibly resulted to him by the admission of that exhibit.

Exhibit "G" was a duplicate of the original sales account showing a sale by the Harrison Commission Company, for the account of H. J. Stone, of three head of cattle, two of which were sold to the Russel Packing Company and one to a commission merchant at the National Stock Yards by the name of Stevens. This is the one which it is claimed was afterwards sold to Weineman. The defendant admits he consigned the three head of cattle to the Harrison Commission Company; that they were delivered on the date mentioned on said slip and were sold by said company on his account for $64.49 and that he received a check therefor. The objection that the slip constituted secondary evidence was properly overruled. It was made out in the usual course of business and was relevant and material in showing the course which the transaction took.

The proof is conclusive that Stevens, the purchaser from the Harrison Commission Company, sold a heifer to Weineman on June 3 and that later this heifer was identified by Bowen as one of his missing cattle. It seems to us that the record shows beyond doubt that this heifer was one of

the cattle which the defendant delivered to the National Stock Yards at East St. Louis on the morning of June 3, 1931, and sold to the Harrison Commission Company; that said company sold it to Stevens, and that Stevens sold it to Weineman. The material question to be determined is whether or not that heifer belonged to the complaining witness, Bowen, or to the defendant.

The defendant testified he owned several head of cattle prior to June 3; that on March 26, 1931, he gave a chattel mortgage to H. H. Schmahl on five cows, one bull, and other property, to secure a note of $2000. The chattel mortgage and note were offered in evidence. Harry Brown, a witness in the defendant's behalf, testified that in the latter part of May and the first of June he saw seven or eight head of cattle, mostly black, weighing around 500 or 550 pounds each, in the defendant's pasture. Frank Griffin testified he was on the defendant's place frequently and during May saw five or six head of black cattle. Levi Schlosser testified to having seen a small herd of black cattle in the early Spring in the defendant's pasture. John Kaliss testified that on May 15, 1931, he was fishing on the defendant's place and saw seven or eight head of cattle, and that some were white, some were Jerseys and some were blacks. Ross Williams testified he was picnicking on the defendant's place May 31 and saw some cattle in a woods pasture south of the defendant's house; that they were black in color, and that he had observed them at other times during April and May. Walter Parks testified he saw some black cattle on the defendant's place in March. Gi Giberson testified he saw several black cattle on the defendant's place in April and May.

The defendant testified he purchased the two cattle he sold to the Producers Live Stock Association but could not recall from whom he purchased them. He said he fed them all winter and that they belonged to him. The three yearling cattle which were sold to the Harrison Com-

mission Company he testified were raised by him from calves and that they belonged to his wife. They were black, and he loaded them in the truck on the afternoon of June 2. He further testified that while he was at supper he directed his fifteen-year-old son to mark the cattle for identification, in compliance with the rules of the Hartford Insurance Company, in which he had insurance for indemnity against loss in delivery of cattle. He frequently trucked cattle for other people for hire. His son testified that while his father was at supper he took a pair of shears and clipped the hair on the right hip of each animal in the shape of the figure "I" and on the right hip of the other two cattle he clipped the hair in the shape of the figure "II." The defendant stated he saw these marks before he took the cattle to East St. Louis. He further testified that when he learned he was suspected of having stolen the cattle and one of them had been located at Weineman's he went to see it, and that the heifer he found there was not one of the cattle he had sold and that there was no hair cut on its right hip. No other witness testified or was called to testify on behalf of the defendant concerning the identity of this animal.

Witnesses Dan Reeder, Charles Bowen, Wash Bowen, Ervin Bowen and C. V. Bowen went to Weineman's place some time between a week and two weeks after June 3. They saw the heifer Weineman had bought from Stevens and identified it as the property of C. V. Bowen. Reeder testified he raised the heifer and that she had a peculiar white mark running from her navel to her bag, and this mark was crossed by a black streak, and that she had thin hips. She had been raised as a pet and went by the name of "Brownie." He could call her by name and she would walk with him. When he saw her at Weineman's she was with a number of other cattle and she recognized him when he called her by name. He sold her to Charles Bowen, father of the complaining witness. The elder Bowen tes-

tified he bought her from Reeder the preceding Fall, kept her all winter and in the Spring let his son have her. He was able to identify her by the white streak above mentioned, and stated positively that the heifer he saw at Weineman's was the same heifer he sold to his son. Wash Bowen testified he knew the heifer and that she belonged to his brother. Ervin Bowen's testimony was substantially the same as that of the last named witness. All of these witnesses testified that the heifer had no mark clipped on her right hip when they found her at Weineman's. No one testified whether or not hair could have grown out in the length of time intervening between June 2 and the time the witnesses went to Weineman's to look at the heifer. Weineman was not asked whether or not the heifer was marked at the time he purchased her.

William Carruthers, a witness called by the People, testified he lived near the defendant and that he was working in a peach orchard near the defendant's pasture on June 2 and saw only three cattle in the pasture. One was a black cow, one a Jersey heifer, and the other was not close enough for him to see distinctly. Luke Parrish testified he was a neighbor of Stone and knew he owned only three cattle on June 2.

On cross-examination the defendant was asked if he had listed any more than two cattle with the assessor. He stated that his boy drove the cattle up toward the house, where the assessor saw them, but only two head were put on the schedule. The assessor, Ed Belcher, was called in rebuttal, and testified that he had inquired of the defendant how many cattle he had and was told he had but two. The assessor also said that the defendant's boy did not drive up the cattle to be examined by him, and the defendant did not tell him that his wife was the owner of any stock or cattle on the farm. Considering the evidence all together, we believe the jury was amply justified in finding the heifer to have been the property of the complaining witness, C. V. Bowen.

The People's sixth instruction is as follows:

"The exclusive possession, shortly after the commission of a larceny, robbery or burglary, of stolen property, the proceeds of the crime, if unexplained, may of itself raise an inference of. guilt of the person having such possession sufficient to authorize a conviction in the absence of any other evidence or fact or circumstance in evidence which leaves in the minds of the jury a reasonable doubt as to the guilt of such person."

The complaint made against the giving of this instruction is that it is only proper in cases where the defendant admits the possession of the stolen property and attempts to explain his possession, or in cases where the possession of the defendant has been conclusively proven. Counsel for the defendant has made quite an exhaustive research of the authorities relative to the principle of law enunciated in the instruction. He admits that this court has in a long line of cases approved that principle, but says it has never been applied to any case where it has not been conclusively shown that the stolen property was found in the possession of the defendant or where his possession was not conclusively shown. We agree that unless the evidence tends to establish one or the other of the two elements mentioned such an instruction ought not to be given. We do not mean to say that it is proper to give it only in cases where the possession is admitted or uncontrovertibly established by the proof. Whether or not the defendant was in possession of stolen property is often a question of fact, and if the proof tends to establish that possession then the instruction may be given regardless of whether the defendant has denied possession or not. The rule as laid down in the instruction objected to has long been the rule in this State. It has received judicial sanction in many cases, beginning with *Jones* v. *People,* 12 Ill. 259, and has been firmly adhered to in all subsequent decisions on the question. While the rule is not universal, and in some jurisdictions, such as

Alabama, California and Nebraska, it is held not to exist, still by far the greater number of courts of last resort acknowledge both the existence and the wisdom of the rule. In *Stover* v. *People,* 56 N. Y. 317, it is said that "proof of possession of stolen property recently after the theft, in the absence of any explanation, shows a strong probability of guilt, but it is for the jury to determine its force, after due consideration of the kind of property, the length of time that has elapsed, the character of the property and the explanation as to how the defendant came into possession." This court in the case of *People* v. *Surace,* 295 Ill. 604, sustained a conviction where an instruction was given in almost the precise language used in the instruction in this case, except that the instruction in the *Surace case* did not limit the possession to "shortly after the commission of a larceny." Although the instruction was faulty in that respect, the court refused to reverse the judgment because the evidence of guilt was conclusive. It suggested the use of an instruction the language of which is substantially the same as the language of the instant instruction.

The record shows that on May 31, 1931, all of the ten cattle which C. V. Bowen owned were missing from his enclosure. Five of them were found that day in the pasture of the defendant, who gave no other explanation for their presence than that he had found them there. The whereabouts of the remaining five was definitely and accurately traced through the transportation and sale by the defendant to commission firms doing business at the stock yards in East St. Louis. The positiveness of the identification of the heifer found at Weineman's is convincing. The guilt of the defendant of the crime charged was shown by the evidence beyond a reasonable doubt, and the judgment of conviction is therefore affirmed. *Judgment affirmed.*