(No. 26986.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error *vs.* JESSIE JONES, Plaintiff in Error.

*Opinion filed March 16, 1943—Rehearing denied May 14, 1943.*

W. G. ANDERSON, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was found guilt of grand larceny in the criminal court of Cook county. A jury was waived and trial had before the court, on the first count of the indictment charging that she feloniously stole a fur coat of the value of $778.30, the property of the "Parker Fur Co. Inc., a corporation."

The facts shown by the People's evidence are that plaintiff in error entered the store of the complaining witness at about eleven o'clock on the morning of February 20,

1942, by means of an elevator, which was the only means of reaching the store. She asked one of the employees of the complaining witness to see fur coats. He, in turn, called another employee who came and waited on her. This employee described the manner in which this prospective customer was dressed, as did the employee who first saw her enter the showroom. She wore a wine-colored coat and hat. The employee who waited on her went into the vault where furs were kept and brought out a black caracul coat valued at $198. Plaintiff in error tried on the coat and then asked if they had something in a good mink coat. The employee then went into the vault and plaintiff in error asked if she might go in with him and look around. There was but one mink coat in the vault, which was the one plaintiff in error is charged with stealing. It had a wholesale value of $778.30. The employee-witness described the vault as being about 50 feet long and 15 feet wide, and testified that the plaintiff in error asked him to show her different types of coat; that he had to turn his back to her to get out two other coats; that when he obtained them and turned around plaintiff in error was bending down as though she were tying her shoelaces; that after looking at the two coats which witness brought, she decided she did not like either of them but would take the caracul coat, and gave him a $10 deposit. He took the money, her name, address and telephone number. She gave her name as Mrs. Josephine Taylor, the address as that of her sister, 6207 South Park, and likewise the telephone number. She signed the deposit slip "J. Taylor." Both the address and the telephone number were later found to be false.

The witness gave her a copy of the deposit slip and she left. He testified that about five to eight minutes after she left, he missed the mink coat; that on March 2 following, he saw plaintiff in error entering a building across the street and had one of the employees call a police officer while he went into this other store and found plaintiff in

error. This witness described plaintiff in error minutely, testifying that she wore an 18 coat size and was wearing a very loose dress and had gold caps on certain of her teeth. He stated that he did not see her take the mink coat and that he was not suspicious of her having done so until after he discovered the coat was gone. He testified that plaintiff in error was the only customer, or person other than employees, in the store on that morning. His testimony as to waiting on her in the fur salesroom was corroborated by other employees.

A police officer testified that he talked with plaintiff in error after she was taken into custody and asked her her name and place of residence, which she gave as Jessie Jones, living at 4702 Indiana avenue; that she told him she had never been in the Parker Fur Company store. He testified also that he obtained plaintiff in error's correct address from a finance company and searched her home at 4140 South Parkway but did not find a mink coat there, but he did obtain a wine-colored coat and hat. Plaintiff in error, after he had ascertained her correct address, admitted that she lived there and gave him a key to her apartment. Plaintiff in error later admitted the wine-colored coat and hat were hers. The police officer testified that he had plaintiff in error write three names on the back of the deposit slip, one of which was Jane Taylor, and that she admitted to him that she had previously used the name Josephine Taylor; that it was her maiden name. It appears that plaintiff in error, when arrested, did not have gold caps on her teeth, as testified to by the witness who waited on her in the Fur Company storeroom; but the police officer testified that on questioning her about that, she told him she had picked those off her teeth previous to her arrest.

She denied that she had taken this coat or that she had been in the complaining witness's store on February 20, 1942, but stated that she was in Dayton, Ohio, on that date. She categorically denied the testimony of the wit-

ness who stated that he had waited on her. She testified she was in Dayton at the home of a friend, a Mrs. Wiggins, on the date of the alleged theft; that she had arrived in Dayton January 30 and remained there four days, later correcting her testimony to the effect that she did not get back to Chicago until the last of February. She denied having had gold caps in her teeth at that time, or that the police officer had ever asked her about them.

The trial court found her guilty, placing the value of the coat at $778.30, and sentenced her to from one to ten years in the Illinois State Reformatory for Women at Dwight, with a recommendation that the prison term be for five years minimum and ten years maximum.

Objections urged here are, first, that the proof does not show beyond a reasonable doubt that the plaintiff in error stole the coat for which she was indicted and convicted. Her conviction rests upon circumstantial evidence. She was identified by employees of the complaining witness as the woman who entered its store on February 20, 1942. The coat alleged to have been stolen was in the vault when plaintiff in error and the salesman entered the vault. No other person or persons were there between the time plaintiff in error entered and left the vault and the discovery that the coat was missing. The proof shows that plaintiff in error admitted that after her arrest she gave the police officer a false address; that her maiden name was Taylor; that she had used the name Mary Harris and the name Kendall, but denied she ever used the name Taylor. She admitted owning the wine-colored coat and hat which the witnesses stated she wore at the time she was in the store. Her defense of alibi was entirely unsupported by other than her own evidence.

To warrant a conviction on an indictment, each essential allegation of the indictment must be proved by competent evidence beyond a reasonable doubt. This degree of certainty is the same in cases of circumstantial evidence as in direct evidence. (*People* v. *Buskievich*, 330 Ill. 532;

*Spick* v. *State,* 140 Wis. 104.) Circumstantial evidence is competent evidence and there is no legal distinction, so far as the required weight is concerned, between direct and circumstantial evidence. (*People* v. *Martishuis,* 361 Ill. 178; *People* v. *Buskievich, supra.*) No errors are assigned here on the admission or rejection of evidence. The trial judge observed the conduct and demeanor of the witnesses while testifying and was in a better position to weigh the testimony than is a reviewing court, and where the evidence is merely conflicting, this court will not substitute its judgment for that of the trial court. (*People* v. *Ristau,* 363 Ill. 583; *People* v. *Overbey,* 362 id. 488; *People* v. *Mangano,* 356 id. 178.) The testimony in the record is positive and clear that the coat was in this vault when plaintiff in error was there. It was missed from five to eight minutes after she left. No one else other than the witness and plaintiff in error was in the vault or in the salesroom at that time. Plaintiff in error wore a loosely constructed dress. In this condition of the record it is not necessary to speculate whether she had stowed the coat under her dress or by what means she made away with it. We are unable to say that the finding of the court is not supported by the evidence.

It is also insisted that there is no competent proof that the Parker Fur Company was a corporation as alleged in the indictment. Two witnesses testified without objection that the Parker Fur Company was a corporation organized under the laws of Illinois. Strict proof of the existence of the Parker Fur Company as a corporation was not attempted, nor was there any attempt to make a *prima facie* case under the Criminal Code by proof of user. The character of the proof of corporate existence offered was not competent and had objection been made to its admission it would have been error to admit it. As no such objection was interposed the proof was sufficient. (*People* v. *Oleszkrivicz,* 337 Ill. 342; *People* v. *Burger,* 259 id. 284.

Plaintiff in error insists that her alibi was conclusively proved, and as it was not contradicted, she should be given

the benefit of a reasonable doubt of her guilt. An accused is required only to support the defense of alibi by proof of facts and circumstances which, considered in connection with all other evidence, creates in the mind of the trial court or jury a reasonable doubt of guilt of the crime charged. (*People* v. *Pelinski,* 293 Ill. 382; *Carlton* v. *People,* 150 id. 181; *Ackerson* v. *People,* 124 id. 563.) Plaintiff in error's testimony as to her alibi, however, was not convincing. It was, moreover, unsupported by any other evidence and directly opposed to the positive testimony that she was in the store of the complaining witness on the day alleged in the indictment. The trial court did not err in refusing to accept her testimony as raising a reasonable doubt as to her guilt.

It is also argued here that the *corpus delicti* was not proved by competent evidence beyond a reasonable doubt. Circumstantial evidence may be resorted to to prove the *corpus delicti* in the same way and to the same extent that such evidence may be introduced to connect the accused with the commission of the offense. (*People* v. *Graves,* 331 Ill. 268; *People* v. *Spencer,* 264 id. 124; *People* v. *Goodwin,* 263 id. 99.) From the facts recited herein, we are of the opinion that the evidence taken as a whole is sufficient to establish the *corpus delicti.*

Plaintiff in error has also raised the question raised in *People* v. *Montana,* 380 Ill. 596, which attacked the constitutionality of the Indeterminate Sentence Law. From the holding of this court in that case it is clear that plaintiff in error was not properly sentenced. She was legally convicted, however, and the judgment will be reversed and the cause remanded to the criminal court of Cook county for the sole purpose of entering, and with directions to enter, a proper sentence.

*Reversed and remanded, with directions.*