**People of the State of Illinois, Plaintiff-Appellee, v. Charles Lee Sims (Impleaded), Defendant-Appellant.**

Gen. No. 50,574.

First District, Fourth Division.

October 28, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Burglary.*

DEFENSE AT TRIAL: Defendant denied that he was present at the time and place of the burglary, or participated therein.

JUDGMENT: The defendant was tried before a court and jury. The jury returned a verdict of guilty and the court imposed a sentence of one to three years at the Illinois State Penitentiary.

POINTS RAISED ON APPEAL:

1) The charge was not proved beyond a reasonable doubt.

2) The trial court erred in giving the jury an instruction which allegedly assumed that the defendant had exclusive possession of the stolen property.

---

* Ill Rev Stats 1963, ch 38, § 19-1. Burglary.

(a) A person commits burglary when without authority he knowingly enters into, or without authority remains within a building, housetrailer, watercraft, aircraft, railroad car, or any part thereof, with intent to commit therein a felony or theft.

(b) Penalty. A person convicted of burglary shall be imprisoned in the penitentiary for any indeterminate term with a minimum of not less than one year.

EVIDENCE: **Testimony of State witnesses, Charles Saporito, John Thomas, Raymond Davis, Sam Gubov, and Thomas Flaherty.**

Charles Saporito testified that he was president of the Saporito Plating Company, located at 1803 South 55th Avenue in Cicero; that when he closed his plant on Saturday, December 12, at approximately 3:30, the north wall of the plant was in perfect condition; that on Monday the north wall had a hole broken in it about two by three feet; that when he took inventory in the plant he found that nickel anodes were missing. He stated that the anodes were kept in a tank in burlap bags with a nickel solution which is green and turns the burlap bags green; that eventually there would be nothing but green salts on the bags, and the salt would come off. Saporito testified that about 200 anodes were missing; that he did not see them again until Monday morning when he saw them in the bed of Gubov's truck at the police station; that he had given no one permission to remove them from his plant; and that their value was approximately $4,000. He further stated that when he saw the defendant at the police station he noticed that the nickel salts substance on defendant's clothing was green; it was the same nickel salts that had come from the anodes in the green solution in the tanks. On cross-examination Saporito testified that the green substance was fresh and could have been on the clothes for four or five hours.

John Thomas, a police officer of the city of Chicago, testified that on the night of December 13, 1964, while he and his partner were patrolling an area near 47th Street and State Street, he noticed that the taillights on a truck were not working and signaled the driver to stop. The truck made a right turn off State Street onto 46th, then made a left turn into an alley. The police were half a block behind the truck. When the truck stopped the driver jumped out and ran; the police were unable to

35

catch him, but a passenger in the truck who was unable to get out was identified as Charles Holiday. The officers determined that the owner of the truck was Sam Gubov. Officer Thomas testified that Holiday's clothing was covered with a green powdery substance. He stated that he called another squad car to watch the truck while he took Holiday to the police station; that while he was at the station Officer Davis, who had been called to watch the truck, came in with the defendant, Sims; and that Sims' clothing was covered with the same "green substance" as Holiday's clothing contained. Officer Thomas testified that he was not able to see the face of the driver of the truck when he fled and he could only describe what he wore—a short black jacket and dark colored pants; and that when Sims was brought into the station he was wearing a short black jacket and dark green pants and a beret. Officer Thomas testified that when he questioned the defendant he said he had no knowledge of the truck or the nickel anodes which were on the truck; that when he had a conversation with Holiday in Sims' presence, both Holiday and Sims said they did not know each other, but that later when questioned by two detectives, Holiday said he did know Sims and that Sims was present when they took the nickel anodes from the factory in Cicero.

Raymond Davis, a police officer, testified that he had been called to watch the truck while Thomas took Holiday to the police station; that he saw a green substance all over Holiday's shirt, coat and pants; that after Officer Thomas left he pulled his squad car into an empty lot near the truck, turned off his lights and waited. He stated that in about 10 minutes he saw a man (the defendant) at the entrance of the alley; that the man stopped and looked towards the truck, walked away, then came back and walked down the alley; that he noticed the green substance on the man's clothes and placed him under arrest. Officer Davis stated that the defendant was wearing dark clothing—work pants and dark jacket

36

which were covered with the green substance, and had in his pocket a pair of gloves also covered with the green powder. Officer Davis testified that the defendant said he was just out for a walk; that he then took the defendant to the police station where he asked Sims and Holiday if they knew each other and they said they did; that in the presence of Sims and Officer Davis, Holiday said they broke a window in the factory, then Sims and Robinson (a third man involved) handed the stuff out to Holiday to load in the truck; that Sims admitted that he was with him. Officer Davis testified that when the detectives arrived Sims denied that he was involved and would not sign the statement.

Sam Gubov testified that the truck was his; that when he parked it the bed of the truck was empty, but when the truck was recovered there were nickel anodes in it which were not his property.

Thomas Flaherty, a police officer, testified that he spoke to Charles Holiday and the defendant, Charles Sims, in the early hours of December 14, 1964; that the defendant denied that he was involved in a burglary with Holiday and denied having anything to do with the truck and the anodes. Officer Flaherty testified that Holiday said he and Sims and a third person had gone out to Cicero where they broke into a factory and took anodes. Officer Flaherty stated that he noticed a green substance on the defendant's clothing and as far as he knew, there were no laboratory reports in the Police Department with regard to the green substance.

**Testimony of Defendant:** Charles Sims testified that he lived at 5100 South State Street, and had lived there for two and a half years; that he dropped out of school, went into the navy, where he served for seven years; that he is employed by the Board of Education as a janitor and had part-time work in a gas station at 4600 South Wabash Avenue; that on December 13, 1964, at 11:00 p. m., he was working on a car which he finished at about 11:15

37

or 11:30, after which he dressed and walked around the corner to catch a bus. He testified that an officer then arrested him and he was taken to the police station where he was asked if he knew Charles Holiday; that he said he had seen him around because they lived in the same neighborhood, but that he did not know him personally; and that at no time did he state that he was involved in any manner whatsoever with Holiday, nor did he hear Holiday make any statement with regard to being involved with him. The defendant denied that he broke into the premises of Saporito Plating Company; denied that he was ever driving or around a truck that contained anodes of any sort; denied that he made any statement whatsoever; denied that he had stains on any of his clothing. He further stated that at the present time the clothes he had worn were at his home in a laundry bag. His wife was living in the home.

 OPINION: The defendant argues in this court that the identification was not sufficient and that he was not proved guilty beyond a reasonable doubt. It is true that there was no specific identification of the defendant except by circumstantial evidence. Officer Thomas described the clothing worn by the man who jumped from the truck; when arrested the defendant was wearing clothing of the same description. There is testimony that the stolen anodes were covered with a green substance which would rub off on the clothing of any person handling them. When Holiday was arrested he had the green powder on his clothing, as did Sims. The defendant makes a point of the fact that the State did not have the clothing chemically analyzed so as to prove that the substance was the same as that on the anodes. However, we must consider that the clothes which the defendant wore at the time in question were in his possession and, as he stated, were in a laundry bag at his home. Besides that, we have the statements of Officers Thomas and Davis that defendant Sims admitted being at the scene

of the burglary; and that Holiday, in Sims' presence told them that Sims had participated in the robbery. Officer Davis further testified that Sims admitted being with Holiday. Circumstantial evidence may be used to prove the corpus delicti just as it may be used to connect the accused with the commission of the crime. People v. Jones, 382 Ill 603, 48 NE2d 364; People v. Feeley, 374 Ill 402, 29 NE2d 593. The credibility of the witnesses was a matter for the jury to determine, and we will not substitute our judgment for that of the jury.

Over the objection of the defendant the trial court gave the following instruction:

> "The exclusive possession, shortly after the commission of a larceny, robbery or burglary, of stolen property, the proceeds of the crime, if unexplained, may of itself raise an inference of guilt of the person having such possession, sufficient to authorize a conviction in the absence of any other evidence of facts or circumstances in evidence which leave in the mind of the jury a reasonable doubt as to the guilt of such person."

The defendant argues that giving the instruction was reversible error, and in support of his contention cites People v. Himstedt, 377 Ill 498, 37 NE2d 165, which is not applicable. In that case the court instructed the jury that "the recent and unexplained possession" of stolen goods gave rise to an inference of guilt. The defendant had admitted possession but made an explanation. The court held that the instruction under those circumstances was bad because it was for the jury to determine the truth or falsity of defendant's explanation. In the instant case defendant did not give any explanation. People v. Stone, 349 Ill 52, 181 NE 648, is directly in point. The court gave the same instruction as the one given in the instant case, and said that counsel for the defendant stated in his brief that in a long line of cases the court had

approved the principle set out in the instruction, but argued that it should only be given in cases where the defendant admits and attempts to explain the possession of the stolen property, or in cases where the possession of defendant has been conclusively proved. The court said:

> "We agree that unless the evidence tends to establish one or the other of the two elements mentioned such an instruction ought not to be given. We do not mean to say that it is proper to give it only in cases where the possession is admitted or uncontrovertibly established by the proof. Whether or not the defendant was in possession of stolen property is often a question of fact, and if the proof tends to establish that possession then the instruction may be given regardless of whether the defendant has denied possession or not. The rule as laid down in the instruction objected to has long been the rule in this State. It has received judicial sanction in many cases, beginning with Jones v. People, 12 Ill 259, and has been firmly adhered to in all subsequent decisions on the question."

In People v. Hurry, 385 Ill 486, 52 NE2d 173, with reference to a similar instruction, the court said:

> "The question of whether or not the defendant is in possession of stolen property is often a question of fact, and if the proof tends to establish such possession then such instruction may be given regardless of whether possession is denied or not. (People v. Stone, 349 Ill 52.)"

In People v. Carvin, 20 Ill2d 32, 169 NE2d 260, cert denied, 364 US 923, the same instruction was given as in the instant case. The defendant argued that the giving of the instruction was prejudicial error because the factual basis of the inference that the article was stolen, was

controverted. The court cited People v. Stone, 349 Ill 52, 181 NE 648, and held that the rule laid down in that case was applicable; that the jury were left free by the instructions to determine the question of fact as to whether the watch was stolen, and that the giving of the instruction was not prejudicial error.

██ In the case before us, if the defendant was the driver of the truck, he was in possession of the stolen property. The question as to whether he was or was not the driver was a question of fact for the jury, and there was sufficient evidence in the record to support their implicit finding that he was the driver and consequently in possession of the stolen goods. The instruction was properly given.

From the entire record it appears that the defendant was proved guilty beyond a reasonable doubt.

DECISION: The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.