The People of the State of Illinois, Plaintiff-Appellee, v.
Richard Mattox, Otherwise Called Richard Maddox,
(Impleaded), Defendant-Appellant.

Gen. No. 51,694.

First District, Second Division.

May 28, 1968.

Manning K. Leiter, of Chicago, for appellant.

148

■■■■■■■■

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, David B. Selig, and Patrick Tuite, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of the murder of Harvey Weinstein and sentenced to a term of twenty to thirty years in the penitentiary. On this appeal he maintains that his guilt was not proven beyond a reasonable doubt in that the body alleged to have been that of Harvey Weinstein was not proven to have in fact been his body.

During the early morning of Sunday, September 29, 1963, a motorist driving on the Calumet Expressway observed an automobile afire in a dumping area a few hundred feet from the Expressway near 138th Street in south Cook County. The police were summoned and the automobile was found to contain the remains of a human body, burned beyond physical recognition, behind the steering wheel in the front seat. A funeral director removed the body to a nearby hospital, where it was pronounced dead, and then transported the body to the Cook County Morgue.

On the following day, Monday, an autopsy was performed on a burned body at the morgue by a Coroner's pathologist, Dr. Wagner. The doctor testified that it was his opinion that the deceased had been dead before being partially consumed by fire, there being evidence of death having been caused by a fractured skull inflicted by a blow from a blunt instrument, whereas there was no evidence of death by burning.

Dr. Zullo, a dentist, testified that he inspected and made a chart of the dental structure of the burned body. After comparing his chart with dental charts submitted

149

by two dentists who treated Harvey Weinstein during life, Drs. Gelberd and Pallotto, Dr. Zullo testified that it was his opinion that all three charts were substantially identical and that the burned body whose teeth he examined was that of Harvey Weinstein. The only difference between the information contained in the charts was that the chart of one of the treating dentists depicted a gold inlay filling where the other two charts depicted a silver inlay filling.

Meyer Weinstein, father of Harvey Weinstein, testified that he was taken to the scene of the burning automobile by police officers on the morning in question and that he saw his son's automobile "burning on the lot there." The witness identified a burned automobile from photographs as the automobile owned by his son. The witness also stated at one point that the automobile owned by his son was a Chevrolet station wagon, but later testified that it was an Oldsmobile station wagon, which Harvey Weinstein in fact did own.

Mr. and Mrs. George Graziani, mutual acquaintances of defendant and the wife of Harvey Weinstein, testified that defendant appeared at their home in Steger, Illinois, at dawn on the morning of September 29, 1963, dressed only in pants and shoes. Both witnesses testified that defendant stated he was "in trouble" and Mr. Graziani further stated that defendant said something to the effect that "I got Harvey."

Defendant contends that his guilt was not proven beyond a reasonable doubt inasmuch as the body alleged to have been that of Harvey Weinstein was not proven to have in fact been his body. We disagree.

██ ██ The argument is advanced that the dental chart comparison made by Dr. Zullo was insufficient to identify the burned body as being that of Harvey Weinstein. Although a question of first impression in this State, it cannot be seriously disputed that a dental structure may constitute a means of identifying a deceased

150

person, otherwise unrecognizable, where there is some dental record of that person with which the structure may be compared. Comparison of dental structures falls within the category of circumstantial evidence and involves the question of weight and credibility, rather than that of competency. See generally 86 ALR2d 722, et seq.; e. g., People v. Donaldson, 8 Ill2d 510, 515, 134 NE2d 776; People v. Jones, 382 Ill 603, 48 NE2d 364.

The charts of Harvey Weinstein's dental structure compiled by Drs. Gelberd and Pallotto between 1957 or 1958 and February 1963, differed from each other in only one minor respect and substantially conformed to the chart made by Dr. Zullo of the dental structure of the burned body. All three charts showed the dental structure to have been missing six specific teeth, three upper and three lower; thirteen specific teeth of the remaining twenty-six were "restored," eight upper and five lower; the "restorations" included three specific crowns in the upper right jaw forming a fixed dental bridge, gold inlay fillings in specific teeth, a specific porcelain inlay filling, and the balance of silver inlay fillings in specific teeth. The three charts therefore compared identically, with the exception of a gold inlay filling which Dr. Pallotto testified he inserted in a tooth in February 1963, which tooth the other charts showed as containing a silver inlay filling. It cannot be said that this single, minute discrepancy so affected the credibility of the chart comparison as to have rendered it wholly meaningless as a means of identification.

■ Defendant nevertheless maintains that Dr. Zullo's comparison of the dental charts had no value for identification purposes for the reason that he failed to relate the probabilities upon which he based his opinion that the dental structure which he examined and charted could have been that of Harvey Weinstein only and of no other person. Defendant's position in this regard is based upon an article on dental identification appearing in Forensic

Odontology (American Elsevier Pub. Co., Inc., 1966, at pp 29–30,) which consists of a study conducted by Gosta Gustafson of the dental records of 775 Swedish school children between the ages of ten years and sixteen years; approximately nine *per centum* of the children surveyed were found to have had identical dental records. However, not only did that study involve persons in their tender years, whereas Harvey Weinstein was a man in early middle age who had undergone considerable dental work during his lifetime, but this was a matter of weight and credibility for the trial judge. Furthermore, on the cross-examination of Dr. Zullo, defendant did not attempt to determine what probability existed that the dental structure of the burned body which Dr. Zullo examined was not that of Harvey Weinstein.

■ Defendant also maintains that the State's evidence failed to trace the body found in the burning automobile to the burned body examined at the morgue and identified as that of Harvey Weinstein the following day. The funeral director called to the scene of the burning automobile, which Meyer Weinstein testified was his son's automobile, testified that on September 29, 1963, he transported the burned body found in that automobile to a hospital where it was pronounced dead, and then delivered it to the County Morgue. Although Mr. Weinstein did at first testify that his son owned a Chevrolet automobile and later stated that he owned an Oldsmobile automobile, he unequivocally testified that he witnessed his son's automobile afire and further identified the automobile at trial from photographs of a burned automobile. Dr. Wagner, the examining pathologist, testified he believed he examined only one burned body at the County Morgue on September 30, 1963, the next working day following delivery to the morgue of the body found in the Weinstein automobile. The same body was then identified by Dr. Zullo from dental report comparisons as that

152

of Harvey Weinstein. It should also be noted that blood taken from the lung of the burned body was of the same type as that found spattered about the home of Harvey Weinstein by police investigators after September 29, 1963. This evidence constituted the necessary connection between the body found in the burning automobile and the body examined at the morgue the following day which was identified as that of Harvey Weinstein.

For these reasons the judgment is affirmed.

Judgment affirmed.

McNAMARA and LYONS, JJ., concur.