(No. 44395.— ▮▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. WILLIE HENRY HARRIS *et al.*, Appellants.

*Opinion filed October 2, 1972.*

THEODORE A. GOTTFRIED, of Ottawa (BRUCE STRATTON, of counsel), for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD P. DROLET, State's Attorney of Kankakee (JAMES B. ZAGEL, Assistant Attorney General, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

Defendants, Willie Henry Harris and Frank Anderson Strowhorn, were convicted of burglary by a jury in Kankakee County. The appellate court affirmed the conviction and we granted leave to appeal. 131 Ill.App.2d 824.

On November 12, 1969, between 9 P.M. and 11 P.M. the Indiana Fruit Market in Kankakee was burglarized and a 200 lb. cash register was taken. At 10 o'clock the next morning two officers of the Kankakee Police Department placed under surveillance a rooming house which occupied the second floor of a building above a tavern, cleaning establishment, cafe and other businesses. A single stairway led to the second floor where some 13 rooms were located and where both defendants lived in separate rooms. While observing the premises the officers saw several people entering and leaving the stairs to the second floor. Harris and Strowhorn made several trips up and down the stairs and Strowhorn was seen entering the cleaning establishment. Another man later emerged from the cleaning establishment carrying a large white canvas bag and went up the stairs. Later, Harris and Strowhorn also went back up the stairs. Shortly thereafter Strowhorn came back down followed by two men carrying what appeared to be a heavy object in a white canvas bag and Harris followed behind them. When they reached the bottom, the officers testified, the four men proceeded to carry the heavy object in the bag for several yards, at which time the officers arrested them.

Strowhorn testified and denied participation in the burglary. He claimed that he had spent the night of November 12 with his fiancee in his room. His fiancee testified that she had been with him in his room from 7 P.M. until 7:30 or 8 o'clock the next morning. Strowhorn also testified that on October 20, 1969, about three weeks before the burglary, both of his arms were fractured and

were placed in casts and were still in casts on the date in question. This was verified by his fiancee. The hospital records likewise substantiated the injury. Strowhorn's doctor was out of town but another doctor examined the X rays and gave his opinion that on November 13, 1969, Strowhorn would not have been able to lift 10 lbs. without great pain. Strowhorn stated that he had not seen the cash register in the rooming house and he did not know what was in the bag. He said that he was arrested when he reached the bottom of the stairs and had not helped the others carry the object in the bag.

Harris testified that he had been in the tavern below the rooming house until about midnight on the night of the burglary when he took a young woman whom he had met to his room where they stayed until the next morning. The woman did not testify. Harris testified further that he had seen the cash register in front of another tenant's door in the rooming house and later saw it in the white canvas bag. Two others carried the cash register down the stairs and he followed. They asked him to help carry it and as he helped lift it he was arrested. He stated that Strowhorn did not help pick up the cash register.

On rebuttal the operator of the cleaning establishment testified that he knew both Strowhorn and Harris and that he had seen Strowhorn and another man in his establishment on the morning of November 13. He also testified that later he was in the rooming house on the second floor of the building where he saw Harris and Strowhorn, among others, and that he also saw the cash register. He stated that he had given the white canvas bag to another tenant on that occasion.

At the conclusion of the trial the court instructed the jury that if they found that the defendants knowingly had exclusive possession of recently stolen property and there was no reasonable explanation of their possession, the jury may infer that the defendants obtained possession of the property by burglary. The defendants contend that it was

error to give this instruction because there is no evidence either direct or circumstantial that either of the defendants ever had possession of the stolen cash register.

Defendants rely on *People v. Mulvaney, 286 Ill. 144,* wherein this court held the giving of a "recent possession of stolen goods" instruction to be error. The court stated at page 119, "Not only must the possession be recent ***, but it must be personal, exclusive and with a distinct implied or express assertion of ownership. A mere constructive possession is not enough." In *Mulvaney* the evidence disclosed that the defendant never had exclusive or personal possession of the stolen automobile involved, which had been left at his father's farm by two men and had been put in a shed by his brother. A few days later defendant at his place of business purchased the automobile from one of the two men for $200. He did not reside on the farm and had never exercised control over the automobile. This court in *People v. Urban, 381 Ill. 64,* also held the giving of the questioned instruction to be error where stolen tools were found in a garage which had been rented to a person other than the defendant. It was held that there was no evidence of possession by the defendant sufficient to support the giving of the instruction.

However, it is not necessary that the element of possession be uncontroverted before the giving of a "recent possession" instruction is appropriate. Whether or not the defendant has possession of stolen property is a question of fact and if the proof tends to establish possession, then the giving of such an instruction is proper regardless of whether or not defendant denies he was in possession of the property. *People v. Stone, 349 Ill. 52, 59; People v. Carvin, 20 Ill.2d 32, 35.*

In our case Harris admitted that he helped carry the cash register and that he had seen it on the second floor of the building and had known that it was in the canvas bag, but he contends he was only helping the others. Strowhorn

denied that he knew anything about the cash register and denied that he helped carry it. Both testified as to alibis. As against this, there is the testimony of the officers as to Harris's and Strowhorn's activities about the building during the morning, of Strowhorn's entering the cleaning establishment shortly before the white canvas bag was taken from the cleaning establishment to the second floor, and of both defendants returning to the second floor of the building shortly thereafter. There is also the testimony of the operator of the cleaning establishment that when he was on the second floor he saw the cash register and both Harris and Strowhorn were present. There is the further testimony of the officers that all four men came down the stairs in a group and that all four of them were carrying the cash register at the time they were arrested.

Possession being a question of fact, under this state of the evidence, it was properly a subject for the determination of the jury, which determination will not be disturbed unless there are facts and circumstances which create a reasonable doubt of the defendant's guilt. (*People v. Wheeler, 5 Ill.2d 474; People v. Bennett, 3 Ill.2d 357.*) It is within the jury's province to believe or not believe the testimony of the defendants and their witnesses. The credibility of the witnesses and the weight to be given to their testimony and the inferences to be drawn therefrom are solely for the jury. (*People v. Pride, 16 Ill.2d 82, 93; People v. Woods, 26 Ill.2d 557.*) Joint possession with another is sufficient to constitute exclusive possession within the meaning of that term as used in the questioned instruction. (*People v. Reynolds, 27 Ill.2d 523; People v. Wheeler.*) The question of possession being a disputed question of fact and there being sufficient evidence to support the State's position, the giving of the instruction was not error.

Defendants finally contend that they were not proved guilty beyond a reasonable doubt. Since their conduct can be explained on a hypothesis of innocence and not guilt,

they contend this explanation must be accepted. We have pointed out above that the jury heard the conflicting evidence and saw the witnesses. The weight and credibility to be attached thereto is peculiarly within the province of the jury. The jury apparently believed the testimony supporting the prosecution and, as in *People v. Woods,* did not believe the testimony supporting the defendants. "This was within the jury's province and we see no reason for disturbing their finding of guilty." (26 Ill.2d 557, at 562.) We cannot say that there are other facts and circumstances which create a reasonable doubt of defendants' guilt.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*