THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KARL CLARK, Defendant-Appellant.

Fourth District  No. 15270

Opinion filed June 20, 1979.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Marc D. Towler and Karen Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

Defendant, Karl Clark, was charged by information with burglary and felony theft in violation of sections 19—1(a) and 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 19—1(a), 16—1(a)(1)). Following a jury trial, defendant was found guilty of both burglary and theft and, thereafter, sentenced to 2 to 6 years' imprisonment. The defendant challenges his convictions, contending: (1) The evidence failed to establish his guilt of burglary beyond a reasonable doubt; (2) the State's attempt to establish his prior convictions by *cross-examination* was improper and prejudicial; (3) the trial court erred in refusing to give his tendered instruction concerning accomplice testimony; (4) his conviction of theft should be vacated because that crime is a lesser included offense of burglary; and (5) alternatively, his conviction of theft should be reduced to a misdemeanor because the jury was not instructed on the issue of the value of the property.

As to the first issue, the defendant primarily argues that there was no direct evidence of his guilt of the burglary and the circumstantial evidence was insufficient to overcome reasonable doubt. The evidence against the defendant consisted essentially of proof of his possession of stolen property which was taken as the result of a burglary.

Illinois State Police officer William Ryan testified that on September 4, 1977, at approximately 9 a.m., he arrested the defendant in connection with his investigation of a separate offense. After the defendant and the passenger in the automobile being driven by defendant, Robin O'Shey Hughes, were placed under arrest, Officer Ryan examined the interior of the vehicle. He discovered a lunch box full of pennies on the floor on the passenger side of the front seat. He also observed a pair of boots and a yellow sheet in the back seat. The sheet was wrapped around a collection of articles, including watches, coins, and key chains. On a search of the trunk of the automobile, with the consent of the owner (Robert Clark, the defendant's uncle), the police seized several pieces of stereo equipment. According to the defendant's uncle, the defendant had borrowed his automobile approximately two hours prior to his arrest. None of the items of property seized by the police were in the vehicle at the time he had loaned it to the defendant.

The defendant initially told Officer Ryan that the stereo equipment and other property belonged to him. Later, however, defendant purportedly told Ryan that the property was owned by Bill Allgood, who

had asked the defendant to sell it for him. Springfield detective Roy Barnett also questioned the defendant later on the afternoon of his arrest. Defendant denied stealing the property in question and claimed that a third person had given him the property to sell. He refused, however, to name this individual, stating that he feared for his life.

John W. Allgood identified the property recovered from the Clark automobile as among a number of items taken from his home which had previously been broken into. Allgood, his father, and several friends had left Springfield early on the morning of September 3, 1977, for a 2½-day hunting trip. Allgood, who was socially acquainted with the defendant, stated that defendant, among others, knew of this hunting trip. The total value of the items found in defendant's possession was approximately $900, according to Allgood. He had not given defendant permission to possess or sell this property. Robin O'Shey Hughes, the passenger arrested with defendant, testified that defendant picked her up in his automobile in the early morning of September 4, 1977. Sometime thereafter they arrived at an apartment which she assumed was the defendant's. She and the defendant went into the apartment and she helped him carry several pieces of stereo equipment to his car. When the defendant's car later broke down, he went to his uncle's house and borrowed his uncle's Cadillac. When he returned they transferred the goods from defendant's car to his uncle's. Sometime later, the two were arrested at a Clark oil station by Officer Ryan.

Hughes admitted that at the time of trial she was on probation for the unlawful possession of a controlled substance. She further acknowledged that on September 4, she had walked out of a hospital where she had been previously admitted and that she might have been on medication at that time.

The record also disclosed that the defendant had given the police permission to search his apartment, but none of the other property taken from the Allgood residence, including guns, a coin collection, and a color television set, was found there. A rifle taken in the burglary was later recovered by the Missouri State Police from Anthony Garzada.

The defendant, testifying on his own behalf, denied committing the burglary and denied any knowledge that the property found in the automobile was stolen. He similarly denied making the alleged inconsistent explanations concerning his possession of the property. His version of the events was essentially that Hughes had placed the goods in his automobile. He testified that he had picked Hughes up at the hospital at her request. They first picked up Hughes' ex-husband and drove him to Sherman, Illinois. Hughes and the defendant returned to Springfield and at the direction of Hughes he drove to a specified residence where Hughes' brother, Cecil Maynard, was staying. Hughes purportedly told

the defendant that Maynard had some stereo equipment and that they could make some money by selling it. The defendant claimed that Hughes told him after their arrest that Maynard "apologized about the merchandise being stolen." Maynard was deceased at the time of the trial. According to defendant, he remained in his car while Hughes went inside the apartment, picked up the stereo equipment, and loaded it in his car. He also stated that after his vehicle had broken down, Hughes, without his assistance, transferred the stereo equipment and other property from his car to his uncle's.

Defendant essentially contends that the evidence merely demonstrates that he knew the victim, John Allgood, would be gone on a hunting trip and that he (defendant) had possession of some, but not all, of the articles taken from Allgood's home. He contends that these facts alone are insufficient to prove his guilt of burglary beyond a reasonable doubt. Defendant seeks support for this argument by reason of the trial court's refusal to instruct the jury that: "If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by Burglary."

■■ The court concluded that the inference suggested by this instruction, which was an adaptation of Illinois Pattern Jury Instructions, Criminal, No. 13.21 (1968) (hereinafter cited as IPI Criminal) was proper as to a charge of theft but not burglary. We disagree. (See *People v. Franceschini* (1960), 20 Ill. 2d 126, 169 N.E.2d 244.) Thus, even though the jury was not so instructed, it nevertheless could have drawn this inference and upon the record here the evidence would be sufficient to sustain defendant's conviction.

■■■ The defendant's possession of the stolen property could readily be held "exclusive" as that term is construed to be relative. The defendant was the driver and had control of the vehicle in which the goods were stored and, therefore, had possession of those goods. (See *People v. Curtis* (1977), 45 Ill. App. 3d 771, 360 N.E.2d 122.) Further, the inference of guilt would not be prohibited merely because there was another occupant in the vehicle, since joint possession is sufficient to constitute "exclusive possession." *People v. Sims* (1966), 77 Ill. App. 2d 33, 222 N.E.2d 137; *People v. Ray* (1967), 80 Ill. App. 2d 310, 225 N.E.2d 467; see generally *People v. Harris* (1972), 53 Ill. 2d 83, 87, 288 N.E.2d 873.

■■ We similarly believe the defendant's testimonial explanation for his possession of the property would not preclude resort to the inference in question here. The jury is not obligated to believe a defendant's explanation. The instruction itself refers to possession where there is no *reasonable* explanation thereof. This qualification necessarily implies that a question of fact may exist concerning an explanation and, thus, the

inference of guilt will not be overcome by simply any explanation. The cases support our conclusion that it was for the jury to determine whether the defendant's possession was reasonably explained. (*People v. Burris* (1969), 116 Ill. App. 2d 79, 253 N.E.2d 628, *cert. denied* (1970), 400 U.S. 835, 27 L. Ed. 2d 67, 91 S. Ct. 71; *People v. Harris* (1971), 131 Ill. App. 2d 824, 268 N.E.2d 724, *aff'd* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) Finally, although approximately 27 hours elapsed between the earliest time the burglary could have been committed and the period when defendant had possession of the goods, the possession was sufficiently recent within the case law interpretation of that term. *E.g., People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551; *Harris.*

In view of the applicability of the inference of guilt, the question of the sufficiency of the evidence is reduced to one of credibility. The weight to be accorded the defendant's explanation and testimony and that of the other witnesses is for the jury. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *Harris.*) In addition to the explanation given by defendant at trial, he allegedly gave several other inconsistent reasons for his possession. We find no cause to disturb the jury's finding of guilt.

The next issue concerns the manner in which the State established defendant's prior convictions. On cross-examination, the State's Attorney asked defendant if he had ever been convicted of any criminal offense. No objection was interposed and defendant replied that he had been convicted for possession of a controlled substance in 1974, a drug related offense in 1970, and a petty theft in 1977. Defendant contends that this examination was so prejudicial as to warrant reversal of his conviction.

■■■ It is well established that proof of a prior conviction to impeach the defendant's credibility must be by the record of conviction or an authenticated copy. The reason for this rule is based on the possible prejudice to the defendant who is compelled to reveal his convictions before a jury by his own testimony. (*People v. Madison* (1974), 56 Ill. 2d 476, 488-89, 309 N.E.2d 11, 18.) Defendant, however, has waived this issue on appeal by failing to object to the improper questioning at trial. *People v. Cunitz* (1977), 45 Ill. App. 3d 165, 172, 359 N.E.2d 1070, 1075; see also *People v. Preston* (1978), 61 Ill. App. 3d 434, 378 N.E.2d 372 (Craven, J., dissenting) (error in the use of cross-examination to prove prior conviction of accused is waived if not raised at the time of the elicitation of the information).

Although there is some authority that such improper cross-examination constitutes plain error, which may be considered by a court of review, it does not follow that a reversal is mandated. (*People v. Beltran* (1977), 51 Ill. App. 3d 810, 367 N.E.2d 273.) Reversal is not required unless the error deprived defendant of substantial justice or influenced the jury's determination of guilt. (*Madison.*) In view of the

evidence, we believe the error here was harmless. A different conclusion might have been warranted had the defendant's testimony been impeached solely by proof of these convictions. However, substantial doubt existed as to his credibility from the proof of the numerous versions and explanations he gave for his possession of the property. We find particularly significant his alleged assertion that the victim himself had given defendant permission to possess and sell the property, when at trial defendant claimed not to have known who the property belonged to, or that it was stolen. The cross-examination, in view of the other impeaching evidence, did not deprive defendant of substantial justice.

Defendant next maintains that the trial court erred in refusing his tendered instruction concerning accomplice testimony. The proffered instruction, which followed IPI Criminal No. 3.17, was refused by the trial court upon the State's argument that the record would not support a conclusion that the witness, Hughes, was defendant's accomplice. The State maintains essentially the same position on appeal.

The test of whether a witness is an accomplice is whether he himself could have been charged for the offense either as a principal or an accessory. (*People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313.) Since possession of stolen property may be joint, it is conceivable that Hughes could have been similarly charged with theft (*People v. Thompson* (1971), 133 Ill. App. 2d 184, 273 N.E.2d 30 (occupant of vehicle containing stolen property)), and possibly burglary (*People v. Umphers* (1971), 133 Ill. App. 2d 853, 272 N.E.2d 278).

■■ We conclude, nevertheless, that the court's refusal to instruct the jury on accomplice testimony was not reversible error. Hughes did not testify that she and defendant were involved in the burglary or theft and, thus, nothing in her testimony directly implicated the defendant in either of these crimes. She merely testified that she helped defendant load the property in question into defendant's automobile. Although her story was somewhat inconsistent with the defendant's, her testimony was not critical to the State's case. We also note that the rationale underlying this cautionary instruction is based on the assumption that an accomplice may well have a motive to testify falsely in the hopes of gaining favor with the prosecution. No attempt was made during cross-examination to explore this possible interest or bias of the witness. No questions were directed to the witness as to whether any promises or other concessions were offered her in exchange for her testimony. Further, the jury was given IPI Criminal No. 1.02, which defines the jury's role in generally determining the credibility of witnesses. In view of the nonincriminating character of Hughes' testimony and the absence of any direct proof of her motive to testify falsely, defendant cannot complain that the refusal of the instruction resulted in reversible error. See generally *People v. Nathanson*

(1945), 389 Ill. 311, 59 N.E.2d 677, *cert. denied* (1945), 325 U.S. 872, 89 L. Ed. 1990, 65 S. Ct. 1412; *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409.

The defendant next contends that his conviction for theft should be vacated because it is a lesser-included offense of burglary. We have previously held, however, that theft is not an included offense of burglary, since the theft need not be consummated to constitute a burglary based upon a larcenous intent. *People v. Baker* (1978), 57 Ill. App. 3d 401, 372 N.E.2d 438.

Finally, defendant maintains that his conviction for theft should be reduced to a misdemeanor since the jury was not instructed on the issue of the value of the property and only a general verdict of guilty was returned. The defendant relies on *People v. Stark* (1978), 59 Ill. App. 3d 676, 375 N.E.2d 826, in arguing that, despite his failure to object to the instructions given or the verdict form submitted, he is not precluded from raising the issue on appeal.

In *Stark*, the court held that a general verdict of guilty was insufficient to support a felony theft conviction. The court distinguished our opinion in *People v. Eastland* (1973), 11 Ill. App. 3d 271, 296 N.E.2d 363, which upheld a felony theft conviction based on a general verdict. The court noted that in *Eastland*, although the verdict form was general, the jury had been instructed that the defendant was charged with theft of property in excess of $150. The instant case is factually on point with *Stark* since no instruction was given describing the charge against defendant or listing the value of the property as an element thereof.

In the present case, the evidence of value is undisputed. Without objection or contradiction, the owner, Allgood, testified that the value of the property found in the defendant's possession exceeded $900. In *Stark*, the court conceded that the value of the property had adequately been proved to be in excess of $150. Despite this proof, however, the court concluded that a reduction of the conviction to misdemeanor theft was mandated by *People v. Dell* (1972), 52 Ill. 2d 393, 288 N.E.2d 459. We are not persuaded by the analysis of *Stark*.

Our supreme court in *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, recently stated:

> "[W]here there is a failure to object to an instruction, waiver is the rule, and the provision of our Rule 451(c) [58 Ill. 2d R. 451(c)] constitutes an exception which, under the proper decisions of this court, is a limited exception [citation], to be used to correct 'grave errors' [citation], or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed [citation]." 75 Ill. 2d 1, 14, 387 N.E.2d 331, 337.

We concede that the failure to instruct on a lesser included offense

(misdemeanor theft) or an element of the offense (value) could be a "grave error" where the evidence is closely balanced. (See, *e.g., People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756.) However, here the evidence on the element of value was not close and was, in fact, uncontradicted. We conclude defendant waived any objection to the instructions or the verdict form given, and we, therefore, decline to reduce the conviction for felony theft.

For the reasons stated herein, the judgment of the trial court is affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.