2024 IL App (1st) 221875

No. 1-22-1875

Second Division
March 19, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 21 CR 60143 |
| EMILY WYNDER, | ) ) ) | Honorable Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant-appellant Emily Wynder was found guilty of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2020)) and sentenced to two years of probation. On appeal, defendant argues that (1) there was insufficient evidence to establish that she knew the car she was driving was stolen, (2) the trial court improperly relied on the statutory inference of knowledge in finding her guilty, and (3) the statutory inference of knowledge in the

possession of a motor vehicle statute is unconstitutional as applied to her. For the reasons that follow, we reverse.

¶ 2                                    I. BACKGROUND

¶ 3       On September 28, 2021, defendant was arrested while driving a Chevrolet Malibu and was subsequently charged by indictment with possession of a stolen motor vehicle (*id.*).

¶ 4       Defendant waived her right to a jury trial, and the matter proceeded to a bench trial, at which the following facts were adduced.

¶ 5       Cheryl Wergin testified that, on September 14, 2021, she owned a 2020 Chevrolet Malibu. That night, she parked the car in her driveway, locked it, went inside her home (which she also locked), and went to sleep. When she woke up the next day, she noticed that her car was gone. She called her sister and the police. While on the phone with the police, she noticed that her dining room window was open and the screen had been removed. She subsequently discovered that the electronic key for the Malibu, which she kept in the entry way of her home, was missing. Wergin testified that she does not know defendant and she had not given defendant or anyone else permission to drive her car.

¶ 6       Chicago police officer Manuel Figueroa testified that, on the afternoon of September 28, 2021, he was on patrol with his partner near West 75th Street and South Eggleston Avenue in Chicago, Illinois, when he observed a 2020 Chevrolet Malibu with no front license plate. He conducted a traffic stop and observed three occupants in the car, including defendant, who was the driver. In response to Figueroa's request for identification, defendant stated that she could not provide identification because it had been lost or stolen. She stated that her name was Stephanie Wynder and her date of birth was July 20, 1980. Figueroa went back to his car and ran the license plate, which showed that the Malibu was stolen and belonged to Wergin. He then ran the name

given to him. Figueroa approached the Malibu again and asked if any of the occupants had identification. When backup arrived, he requested that defendant exit the car. He then asked defendant "where she got the vehicle," and she twice responded that she "got it from a friend named Cheryl." She also stated that she got the car from one of the other passengers. Figueroa placed defendant in custody, and she was transported to the police station.

¶ 7     On cross-examination, Figueroa confirmed that defendant told him twice that she was picked up by Darryl Williams, one of the other occupants of the car. He also confirmed that he spoke with Williams at the scene and that Williams told Figueroa that he borrowed the car from Kevin Steele. Figueroa admitted that defendant stated that she did not know the car was stolen.

¶ 8     The State entered into evidence Figueroa's body-worn camera footage showing the traffic stop and his questioning of defendant and Williams. In the footage, Figueroa approaches the driver's side of the car and asks defendant for identification. She states that she does not have her driver's license because she lost her purse and her wallet was stolen. She then provides Figueroa with the name Stephanie Wynder. Figueroa returns to his police vehicle for a few minutes. When he returns to the driver's side of the Malibu, he asks if anyone has identification and directs that it should be given to his partner. He instructs the three occupants in the car to exit and then places handcuffs on defendant. As Figueroa is walking defendant to the back of the Malibu, he asks her, "Whose vehicle is this?" She responds, "I borrowed it from a friend." He then asks, "What friend?" And she responds, "It's Cheryl's car. It's Cheryl's car. I don't know." Then she nods towards one of the other occupants and states, "I borrowed it from Darryl [Williams]." Again, she nods towards the same person and states, "I got it from him." Figueroa then asks Williams, "Where did you get this car from, man?" Williams responds, "From a friend." Figueroa then asks, "What friend?" He responds, "Kevin." Then he looks over at defendant and asks, "What's Kevin's last name?" She

responds, "Steele." Figueroa then states, "Well she just gave me a totally different name." Figueroa repeatedly asks Williams whose car it is, and Williams either does not respond or states that he already told Figueroa. Moments later, Figueroa asks defendant, "Are you going to give me a real name?" Defendant admits that her name is Emily Wynder and gives her correct date of birth. Eventually, all three occupants are transferred into different police vehicles.

¶ 9 The State rested, and defendant moved for a directed finding, which the court denied.

¶ 10 The defense called Raymond Parker as a witness. He testified that he has known defendant for seven or eight years. He confirmed that he saw defendant in a car on September 28, 2021, in the area of 7451 South Eggleston Avenue. He waved defendant over. Also in the car at that time was Williams, who Parker had seen before but did not know. Parker asked defendant for a ride to the store. Parker testified that he asked about the car and Williams stated that the car was his. He later clarified to Parker that it was his aunt's car. Parker testified that he inquired because he knows people steal cars and he did not think that Williams had the "means to have a car like that." He further stated that he had previously been in cars "where people have been found guilty of stolen car."

¶ 11 Defendant testified on her own behalf. She testified that she did not know the car was stolen and informed Figueroa that it was Cheryl's car. She further testified that Williams stated that it was his aunt Cheryl's car and he had borrowed it from her. She also stated that she gave Figueroa her sister's name at first because she believed she had an arrest warrant in Indiana and she did not want to get arrested. After she learned that the car was stolen, she gave the officers her correct name and stated that Williams had picked her up a week prior to the incident. She testified that she did not observe any damage to the car. On cross-examination, she admitted that she was not sure whether she gave officers her correct name before or after she was informed the car was stolen.

¶ 12    The trial court found defendant guilty of possession of a stolen motor vehicle. In so ruling, the trial court stated:

> "I have listened to the testimony of all the witnesses and to[*sic*] not only considered what they have to say but how they said it in court, their demeanor in court, and the reasonableness of the testimony in light of all the evidence in the case. And I find that the State has proven *** that [defendant] possessed that car with knowledge that it was stolen. You did obviously possess that car. You were driving that car not only when the police pulled you over but according to your own witness, when you were driving down the street, so you have clearly possession of that vehicle. And you offered an explanation for possession of [the] vehicle, but I don't find that explanation credible at all in light of all the evidence. I don't find based on the testimony of the officers what you said previously which, what you said in court, I don't find your testimony credible as to the explanation. I do find that based on everything that I heard you knew the car was stolen, the vehicle that you were driving was stolen so you are going to be found guilty of Count 1, possession of stolen motor vehicle."

¶ 13    Defendant filed a motion for a new trial, arguing, *inter alia*, that (1) the State failed to prove defendant guilty beyond a reasonable doubt, (2) the statutory inference of knowledge is unconstitutional as applied to her, and (3) the findings were against the manifest weight of the evidence. The trial court denied the motion.

¶ 14    On November 14, 2022, the trial court imposed a sentence of two years' probation with a requirement that defendant continue receiving drug treatment.

¶ 15    This appeal followed.

¶ 16                                                II. ANALYSIS

¶ 17     On appeal, defendant argues that (1) the State did not prove beyond a reasonable doubt that she knew the car was stolen, (2) any statutory inference of knowledge is inappropriate under the circumstances of this case, (3) and the statutory permissive inference of knowledge upon which the trial court relied is unconstitutional as applied to defendant. We address together defendant's arguments regarding the sufficiency of the evidence and the applicability of the statutory permissive inferences.

¶ 18     When a defendant challenges the sufficiency of the evidence against him, this court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact with regard to the credibility of witnesses or the weight to be given to each witness's testimony. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). That said, "the fact that defendant is 'probably' guilty does not equate with guilt beyond a reasonable doubt." *People v. Ehlert*, 211 Ill. 2d 192, 213 (2004). "[A] criminal conviction cannot stand on appeal if the prosecution's evidence is so weak as to create a reasonable doubt [as to] defendant's guilt." *People v. Hernandez*, 312 Ill. App. 3d 1032, 1036 (2000). A defendant's conviction will be reversed only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of his guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 19     The State has the burden of proving beyond a reasonable doubt each element of an offense. *People v. Gray*, 2017 IL 120958, ¶ 35. For unlawful possession of a stolen motor vehicle, the State had to prove (1) defendant possessed the vehicle, (2) defendant was not entitled to possession of

the vehicle, and (3) defendant knew the vehicle was stolen. 625 ILCS 5/4-103(a)(1) (West 2020). The statute also provides that knowledge can be inferred "from the surrounding facts and circumstances, which would lead a reasonable person to believe that the vehicle or essential part is stolen or converted" or "if the person exercises exclusive unexplained possession over the stolen or converted vehicle or essential part, regardless of whether the date on which the vehicle or essential part was stolen is recent or remote." *Id.* Defendant does not dispute that she possessed the Malibu or that the Malibu was stolen. She only contests the court's finding that she had knowledge that the Malibu was stolen.

¶ 20    In particular, defendant argues that the State did not present sufficient evidence to show that she had knowledge that the Malibu was stolen where "the uncontradicted evidence was that she believed the car belonged to [Williams' aunt Cheryl], who had given him permission to drive it." She also argues that it was improper for the court to find that defendant's knowledge could be inferred because she had "exclusive, unexplained possession" of the car where there was an absence of direct or circumstantial evidence that she knew it was stolen. She asserts that the statutory inference of knowledge was inapplicable in this case because her possession of the car was not "unexplained."

¶ 21    In response, the State argues that the evidence showed that "defendant repeatedly lied to police during the traffic stop" and "provided a shifting, false narrative about who owned the Malibu and how she came to possess the car," and these "repeated deceptions were sufficient circumstantial evidence to prove that she knew the car was stolen." Additionally, the State argues that the record does not suggest that the trial court found defendant guilty based on the permissive inference and, regardless, defendant's proffered explanation was "improbable and properly rejected." The State also contends that there was sufficient circumstantial evidence "that directly

established that defendant knew the car was stolen independent of the statutory permissive inference."

¶ 22    For the reasons that follow, after viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence presented at trial is so unsatisfactory that it creates a reasonable doubt of defendant's guilt.

¶ 23    We first address the applicability of the statutory permissive inferences. "A permissive inference is one that simply allows, but does not require, the finder of fact to infer the existence of the ultimate or presumed fact upon proof of the predicate fact, without placing any burden on the defendant." *People v. Greco*, 204 Ill. 2d 400, 408 (2003) (citing *People v. Watts*, 181 Ill. 2d 133, 142 (1998)). As stated above, the statute provides that knowledge can be inferred "from the surrounding facts and circumstances, which would lead a reasonable person to believe that the vehicle or essential part is stolen or converted" or "if the person exercises exclusive unexplained possession over the stolen or converted vehicle or essential part, regardless of whether the date on which the vehicle or essential part was stolen is recent or remote." 625 ILCS 5/4-103(a)(1) (West 2020).

¶ 24    The first inference is not applicable because no evidence was presented demonstrating that the Malibu had any damage suggesting that it was stolen. Examples of this would be a peeled steering column or damage to the windows or locks on the vehicle. See *People v. Abdullah*, 220 Ill. App. 3d 687 (1991) (steering column damaged and broken key lodged in ignition that did not start the van); *People v. Ferguson*, 204 Ill. App. 3d 146 (1990) (knowledge properly inferred where the steering column was peeled and the key in the ignition would not start the vehicle); *People v. Tucker*, 186 Ill. App. 3d 683 (1989) (steering column damaged and broken locks on the glove

compartment and trunk); *People v. Santana*, 161 Ill. App. 3d 833 (1987) (partially disassembled car and windows painted black). None of these were present in this case.

¶ 25 The second inference, to which the parties devote much of their arguments, is also not applicable. It provides that knowledge can be inferred where there is exclusive, unexplained possession of the stolen vehicle. We base our conclusion that this inference is not applicable on the exclusivity element.

¶ 26 Defendant argues that the evidence failed to demonstrate that she exercised "exclusive" possession of the Malibu and asserts that her joint possession with Williams "significantly weakens any inference that *she* knew it was stolen." In opposition, the State contends that "a person may still have exclusive possession even if multiple people are present." The State cites *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000), and *Santana*, 161 Ill. App. 3d at 837, for support of this proposition. We disagree.

¶ 27 The State's proposition that exclusive possession may also be joint possession is commonly used within the context of criminal possession of controlled substances (as well as drug paraphernalia and firearms). In *Schmalz*, a case involving unlawful possession of cannabis and drug paraphernalia, the supreme court found that, even though there were three other individuals in the room, the defendant had the contraband "in her immediate and exclusive possession or control," where it was sitting less than 12 inches away from her. 194 Ill. 2d at 77, 82-83. In so concluding, the court held that "if two or more persons share immediate and exclusive control or share the intention and power to exercise control, then each has possession." *Id.* at 82. This is a well-established rule of law applied where the element of possession is at issue. However, possession is not disputed here; knowledge is. Nothing about the rule of law regarding joint and exclusive possession in controlled substance cases concerns the possessor's knowledge. Although

two individuals sharing control of a controlled substance indicates equal possession, it does not necessarily follow that the sharing of control also indicates equal knowledge. Thus, we do not find that the principle of law of joint and exclusive possession in that context can be strictly applied in this context for purposes of inferring knowledge.

¶ 28 We also find that *Santana*, the other decision the State cites for this proposition, does not support its argument. In *Santana*, the defendants were charged with possession of a stolen motor vehicle, where they were both found leaning into the stolen vehicle in a garage. 161 Ill. App. 3d at 835-36. The appellate court employed the rule of joint and exclusive possession in finding that the element of possession was satisfied, but the fact that two individuals had joint possession of the vehicle was not discussed with respect to the element of knowledge. *Id.* at 837-38. Thus, that decision does not assist the State in proving that knowledge can be inferred from joint and exclusive possession.

¶ 29 Our review of the record shows that defendant was driving the Malibu but she claimed that she borrowed it from Williams, and Williams did not contemporaneously deny that assertion on the scene. For that reason, we find that Williams and defendant shared possession of the Malibu. However, there has been no dispute in this case regarding whether the possession element of the statute was satisfied. The question is whether defendant and Williams's joint possession leads to a reasonable inference that defendant knew the Malibu was stolen. We conclude that it does not.

¶ 30 Both individuals had possession of a vehicle two weeks after it was stolen. The fact that two individuals had control of the Malibu undermines any inference of knowledge, especially where the Malibu was not recently stolen and the evidence suggests that Williams initially possessed the Malibu prior to defendant. Although recency is not a requirement of the statutory permissive inference, it nonetheless remains true that "the elapse of time *** decreas[es] the value

of the inference." *People v. Funches*, 212 Ill. 2d 334, 344 (2004).[1] If the car had been stolen that day, we would agree with earlier caselaw and find that defendant's possession, even though joint with Williams, would reasonably suggest that she was aware that the Malibu was stolen. In this instance, however, we cannot say a reasonable inference of knowledge can be made based on the joint possession of the Malibu. Accordingly, we conclude that defendant's joint possession of the Malibu under these circumstances does not lend itself to an inference of knowledge.

¶ 31     Because neither of the inferences of knowledge are applicable, we must otherwise determine whether the evidence presented in this case was sufficient to prove beyond a reasonable doubt that defendant knew that the Malibu was stolen.

¶ 32     It is the State's burden to prove defendant's knowledge that the Malibu was stolen. See 625 ILCS 5/4-103(a)(1) (West 2020). Direct proof of knowledge is not required; rather, the State may prove knowledge by " 'circumstances that would induce a belief in a reasonable mind that the property was stolen.' " *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53 (quoting *Abdullah*, 220 Ill. App. 3d at 690). "Where possession has been shown, an inference of defendant's knowledge can be drawn from the surrounding facts and circumstances." *Abdullah*, 220 Ill. App. 3d at 691.

---

[1]Previously, under common law, the inference of guilt or knowledge in cases of theft, burglary, or possession of stolen property required that the exclusive possession of the stolen property be recent. See *People v. Reynolds*, 27 Ill. 2d 523, 525-26 (1963) ("Evidence of recent, exclusive and unexplained possession of stolen property by an accused, either singly or jointly with others, may, of itself, raise an inference of guilt absent other facts and circumstances which leave in the mind of the jury a reasonable doubt as to guilt."). The legislature codified the inference and eliminated the requirement of recency. See *Funches*, 212 Ill. 2d at 344. In a number of cases predating the codification and elimination of the recency requirement, joint possession was found to be sufficient for the inference. See *People v. Sherman*, 110 Ill. App. 3d 854, 859 (1982) (joint possession was sufficient to create an inference of guilt where the vehicle was recently stolen); *People v. Ross*, 103 Ill. App. 3d 883, 887 (1981) (joint possession satisfied the rule of exclusive possession where the stereo was recently stolen); *People v. Clark*, 73 Ill. App. 3d 85, 89 (1979) (multiple occupants of the vehicle did not prohibit an inference of guilt where the property found in the vehicle was recently stolen).

¶ 33    As we explain below, the surrounding facts and circumstances did not give rise to an inference of knowledge, and thus, the evidence presented was so unsatisfactory that defendant's guilt could not have been proven beyond a reasonable doubt.

¶ 34    The State contends that there was "ample circumstantial proof" of defendant's knowledge of the Malibu's stolen nature. This proof consists of her initial lie to the police about her identity, as well as her "shifting" and "false" narrative about the Malibu's origins and ownership. The State claims that defendant provided four different explanations of how she came to possess the car and that they were inconsistent with each other.

¶ 35    Defendant disputes the State's characterization of her statements to law enforcement and insists that there were no inconsistencies in her statements. She also argues that her explanation was reasonable and did not conflict with her statements given on the scene. Specifically, defendant points to her testimony that she believed that the car belonged to Williams's aunt, Cheryl, and Williams had picked her up in the car and let her borrow it. Defendant also cites Parker's testimony, which corroborated her own.

¶ 36    We acknowledge that deference is owed to the trier of fact's credibility findings because "[t]he trier of fact is best equipped to judge the credibility of witnesses." *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007). However, credibility findings are neither binding nor conclusive. *Id.* at 115. In the instant case, the trial court did not find defendant to be credible and found that her explanation was not reasonable. We recognize that the trier of fact has no obligation to find the defendant offered a reasonable explanation or to accept her version of the facts. *Abdullah*, 220 Ill. App. 3d at 691; *People v. Campbell*, 146 Ill. 2d 363, 380 (1992) (the fact finder is under no obligation to "search out all possible explanations consistent with [defendant's] innocence and raise them to a level of reasonable doubt"). However, we disagree with the trial court's credibility

finding. Nonetheless, we need not disturb that finding because we ultimately conclude that, even accepting the trial court's credibility finding, there was insufficient evidence to prove defendant guilty of possession of a stolen motor vehicle. See *People v. Hodogbey*, 306 Ill. App. 3d 555, 562 (1999) ("That the [trier of fact] may have disbelieved the testimony of [the] defendant will not excuse" the State's failure to prove that the "defendant knowingly possessed the heroin.").

¶ 37    We do not agree with the State's characterization of defendant's statements. First, defendant's statements that she borrowed the Malibu from a friend—followed by statements that "It's Cheryl's car" and that she borrowed it from Williams—are not necessarily conflicting statements. Williams could be the friend to which she referred, and her statement that she borrowed the car from Williams does not negate the prior statement where the car could still be owned by Cheryl. The State's characterization of her statements as identifying three different owners of the Malibu is conjecture at best. Next, we do not agree with the State that defendant also stated that the car belonged to Kevin Steele. Rather, she merely provided the last name of a person when Williams was being questioned as to "where he got the car." We do not take this to mean that defendant herself was asserting or agreeing that the Malibu belonged to Kevin Steele. Finally, we find it telling that, when defendant stated that she borrowed the car from Williams, Williams, who was standing directly in front of her, did not refute her statement. Moreover, other than asking defendant for her correct name and date of birth, the officer continued to question Williams, not defendant, as to the ownership of the car. Thus, we reject the State's characterization of defendant's narrative as "shifting" and find that the State's assertion that she named four different individuals as owners of the Malibu to be a misstatement of the facts.

¶ 38    The State contends that defendant's lie about her identity and the "falsehoods" in defendant's narrative about the Malibu's origins are circumstantial evidence of her knowledge that

the Malibu was stolen. In citing *People v. Drake*, 2019 IL 123734, ¶ 26, and *People v. Milka*, 211 Ill. 2d 150, 181 (2004), the State asserts that lies are evidence of consciousness of guilt. Although we do not disagree with the State that false, exculpatory statements can be considered probative of a defendant's guilt, in each case the State cites, there was other circumstantial evidence presented upon which the trier of fact could rely in finding the defendant guilty. The defendant's lies were never the *only* evidence. Moreover, in those cases, there was additional evidence proving that the defendant's statements were, in fact, false.

¶ 39 In *Drake*, the defendant was convicted of aggravated battery where the victim, the defendant's six-year-old stepson, suffered severe burns to his body. *Drake*, 2019 IL 123734, ¶¶ 1, 3. The appellate court reversed his conviction and held that retrial was barred by the double jeopardy clause. *Id.* ¶ 1. The State appealed, arguing that there was sufficient evidence to find the defendant guilty and, thus, retrial was the proper remedy for improperly admitted evidence. *Id.* ¶ 18. In concluding that there was sufficient evidence, our supreme court pointed out that the defendant made several false exculpatory statements, which could be viewed as evidence of consciousness of guilt. *Id.* ¶ 26. Specifically, the defendant gave hospital staff a false name and falsely stated that he was the child's uncle and that the child was with a babysitter that day. *Id.* In fact, the evidence proved that the defendant was the only adult present at the time the child was injured, and the defendant did not seek prompt treatment for the injuries. *Id.* Additionally, there was improperly admitted hearsay evidence that the child admitted to a nurse that the defendant poured a cup of hot water on him, as well as expert testimony that the burns resulted from forced immersion in hot water and not due to an accident. *Id.* ¶¶ 25-28 (any improperly admitted evidence must also be considered when conducting a sufficiency analysis for retrial purposes). Thus, this case is clearly distinguishable from *Drake*, where there was corroborating evidence other than the

defendant's lie about his identity and where his exculpatory statement that the child was with a babysitter at the time the burns occurred was refuted.

¶ 40    The evidence in *Milka* is similarly distinct from the case before us, rendering it inapposite. In that case, following a jury trial, the defendant was convicted of sexual assault and murder. *Milka*, 211 Ill. 2d at 153. On appeal, the defendant argued, *inter alia*, that the evidence was insufficient to prove, beyond a reasonable doubt, that he killed the victim. *Id.* at 178. In particular, he argued that "any false statements he made were of little significance since his accounts of his activities [on the day of the victim's murder] were all exculpatory." *Id.* at 181. Our supreme court disagreed with that argument, noting that "[a] false exculpatory statement is 'probative of a defendant's consciousness of guilt.' " *Id.* (quoting *People v. Shaw*, 278 Ill. App. 3d 939, 951 (1996)). The court stated that the defendant's whereabouts at the time the murder took place was critical to the case and he never gave a consistent explanation of his activities. *Id.* Additionally, the court noted that his alibi was proven false because there was no surveillance video of his presence at a gas station, contrary to his statement, and a witness testified that he was not seen at a certain business that evening, contrary to his statement. *Id.* There was also other evidence supporting the defendant's guilt—namely, the victim's blood that was found in the defendant's vehicle and the defendant's accurate description of the location of the victim's body before it was discovered. *Id.* at 183. Thus, in *Milka*, the defendant was not convicted solely on the basis of a false statement.

¶ 41    Here, the only evidence presented to support an inference of knowledge was defendant's initial lie regarding her identity and her statements made at the scene. Taking first defendant's lie about her identity, we note that nothing about defendant's identity is inherently related to her knowledge of the Malibu's origins or stolen nature, and therefore, it does not constitute a false,

exculpatory statement. Certainly, defendant was likely concealing her true identity because of some criminal activity—which she, in fact, admits in her own testimony. However, for that lie to serve as the sole basis for her knowledge of the Malibu's stolen nature would give it unwarranted weight in this case.

¶ 42 Further, unlike in *Milka* and *Drake*, there was no demonstrable proof that defendant's actual knowledge of the Malibu's origins was, in fact, contrary to her statements at the scene. Stated another way, the State presented nothing to prove that defendant *knew* that Williams did not legitimately borrow the Malibu from a woman named Cheryl. Her narrative can hardly be characterized as false when it has not been proven as such. Thus, the State's citations are not applicable to the circumstances before us, and defendant's initial lie about her identity is insufficient, *by itself*, to prove that she knew that the Malibu was stolen. See *People v. Puente*, 98 Ill. App. 3d 936, 942 (1981) ("[A] false exculpatory statement has probative value as evidence of consciousness of guilt," but it is "not conclusive evidence of consciousness of guilt.").

¶ 43 We also reject the State's assertion that *Jacobs*, 2016 IL App (1st) 133881, is analogous to this case. There, the victim's house was burglarized and his Kia was stolen from his garage, using the car keys stolen from the kitchen counter. *Id.* ¶¶ 15-17. About a week later, law enforcement conducted a traffic stop on the stolen Kia, in which there were two occupants, including the defendant, who was the driver. *Id.* ¶¶ 31-33. The defendant first stated to police that he borrowed the car from a friend but later claimed that he had rented it from someone for $40. *Id.* ¶¶ 34-35. The car had no damage when it was recovered and there was nothing about the car's condition that would suggest it had been stolen. *Id.* ¶ 36. Although this court ultimately vacated the defendant's conviction on a separate issue, it affirmed that there was sufficient evidence from which the jury could properly reject the defendant's explanation and infer his knowledge that the Kia was stolen.

*Id.* ¶ 56. We agree that the facts are largely similar to those in the case before us; however, present in this case is the testimony of a defense witness that supported an inference that defendant *did not* have knowledge of the Malibu's stolen nature. Moreover, the body-worn camera footage shows that Williams appeared to concede that defendant borrowed the Malibu from him, which lessens any inference of knowledge. It is the additional exculpatory evidence in this case that distinguishes it from *Jacobs*. Thus, we find that case inapposite.

¶ 44 Significantly, the trial court did not make any credibility findings in regards to Parker, defendant's witness. In fact, the court did not remark at all upon Parker's testimony. As such, there is no finding to which this court can defer. Under the circumstances before us, we do not find that it would be appropriate to wholly discount Parker's testimony where he was not impeached and there was no evidence of his untrustworthiness. Certainly, the weight of his testimony is lessened due to his connection to defendant. However, in a case where there is almost no evidence from the State regarding defendant's knowledge, and none directly refuting her statements, we cannot outright dismiss Parker's testimony.

¶ 45 At trial, Parker testified that Williams informed him that the car was his and later clarified to Parker that it was his aunt's car. Parker explained that he asked Williams about the car because he did not think that Williams had the "means" to own that car. Significantly, defendant was also in the Malibu at the time of this conversation. Thus, this testimony supports an inference that Parker and defendant believed it was Williams's aunt's car and were not aware that it was stolen. This testimony also does not contradict any of defendant's statements made at the scene, where she stated that it was Cheryl's car and she borrowed it from Williams. Moreover, there is nothing inherently unreasonable or implausible about Parker's explanation.

¶ 46    As stated, it is the State's burden to prove defendant's knowledge that the vehicle was stolen. See 625 ILCS 5/4-103(a)(1) (West 2020). "It is not the defendant's burden to affirmatively prove that he knew it was legitimately acquired." *People v. Miller*, 2021 IL App (1st) 190060, ¶ 53. Further, "a conviction may not stand based upon weaknesses in the defendant's case." *People v. Gordon*, 204 Ill. App. 3d 123, 128 (1990).

¶ 47    In this case, nothing about the condition of the Malibu suggested that the vehicle was stolen, defendant did not attempt to flee the scene or evade police, and there was no evidence that she was involved in the initial theft. There was, however, some evidence supporting an inference that defendant did not have knowledge of the vehicle's stolen nature. The State's only circumstantial evidence of defendant's knowledge was her initial lie about her identity and her lack of credibility regarding her explanation. Even if defendant's testimony is disregarded in its entirety and her statements to police are not believed, that would not mean that the State proved beyond a reasonable doubt that she had the requisite knowledge for this crime. See *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 34 ("[T]he fact that we do not believe [the defendant's] testimony would not mean that the State proved beyond a reasonable doubt that she had the necessary knowledge."); see also *United States v. Di Stefano*, 555 F.2d 1094, 1104 (2d Cir. 1977) ("[F]alsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt." (Internal quotation marks omitted.)). "[T]here is a line between reasonable inference and mere speculation." *Sanchez*, 2013 IL App (2d) 120445, ¶ 28. We find that the evidence presented in this case amounts to mere speculation as to defendant's knowledge and simply cannot support a finding that defendant knew the Malibu was

stolen. Thus, even viewing the evidence in the light most favorable to the State, we must conclude that the evidence was so unsatisfactory as to create a reasonable doubt of defendant's guilt. Accordingly, the trial court's guilty finding is reversed.

¶ 48    Finally, because we reverse the finding of guilt in this case, we need not reach defendant's as-applied constitutional challenge. See *People v. Bass*, 2021 IL 125434, ¶ 30 ("[C]ourts must avoid reaching constitutional issues unless necessary to decide a case.").

¶ 49                                III. CONCLUSION

¶ 50    For the reasons stated, we reverse the judgment of the circuit court.

¶ 51    Reversed.

***People v. Wynder*, 2024 IL App (1st) 221875**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CR-60143; the Hon. Ursula Walowski, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Sally M. Cohen, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Matthew Connors, and Zachary M. Slavens, Assistant State's Attorneys, of counsel), for the People. |